UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    STITH FARMS                                     CASE NO. 07-62318
                                                                 Chapter 12 Consolidated Case
                          Debtors

--------------------------------------------------------
BAILLIE LUMBER CO, L.P.

                          Plaintiff

        vs.                                  ADV. PRO. NO. 07-80007

ROY STITH
RITA STITH

                          Defendants
--------------------------------------------------------
BAILLIE LUMBER CO., L.P.

                          Plaintiff

        vs.                                  ADV. PRO. NO. 07-80010

ALAN STITH
SYLVIA STITH

                          Defendants
--------------------------------------------------------
BAILLIE LUMBER CO., L.P.

                          Plaintiff

        vs.                                  ADV. PRO. NO. 07-80039

STITH FARMS

                          Defendants
--------------------------------------------------------
APPEARANCES:

HODGSON RUSS, LLP                          PETER A. MUTH, ESQ.
Attorneys for Baillie Lumber co., LP           Of Counsel

140 Pearl Street, Suite 100
Buffalo, New York 14202-4040

PETER A. ORVILLE, ESQ.
Attorney for Debtors
30 Riverside Drive
Binghamton, New York 13905

MAXSEN CHAMPION, ESQ.
Staff Attorney for Chapter 12 Trustee
250 South Clinton Street, Suite 203
Syracuse, NY 13202

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Presently before the Court are motions for summary judgment ("Motions") pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), on behalf of Baillie Lumber Co., L.P. ("Plaintiff" or "Baillie"), on December 17, 2007 and December 18, 2007 in three separate adversary proceedings against Roy and Rita Stith (Case No. 06-62522; Adv. Pro. 07-80007); Alan and Sylvia Stith (Case No. 06-62679; Adv. Pro. 07-80010) (hereinafter collectively referred to as the "Individual Debtors" or "Individual Defendants"); and Stith Farms (Case No. 07-62318; Adv. Pro. 07-80039) (collectively the "Consolidated Debtors"). Opposition to the Motions was filed on behalf of the Individual Defendants, as well as Stith Farms, on January 31, 2008.

The Motions were heard on February 5, 2008, at the Court's regular motion term in Binghamton, New York. The Court afforded the parties an opportunity to file memoranda of law

3

in support of their respective positions.  The Motions were submitted for decision on February 25, 2008.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these adversary proceedings pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(I).

## FACTS

Roy and Rita Stith filed a voluntary petition pursuant to chapter 12 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"), on October 12, 2006.  Alan and Sylvia Stith filed their petition pursuant to chapter 12 on October 25, 2006.  Stith Farms filed a voluntary petition pursuant to chapter 12 on May 7, 2007.  By Order, dated July 20, 2007, the Court granted the Debtors' motion to substantively consolidate the three cases, with Stith Farms (Case No. 07-62318) being designated the "main case."  Baillie commenced an adversary proceeding against Rita and Roy Stith on January 17, 2007.  It commenced an adversary proceeding against Alan and Sylvia Stith on January 29, 2007.  On July 12, 2007, it commenced an adversary proceeding against Stith Farms.  All three adversary proceedings seek a determination of nondischargeability of a debt owed to Baillie pursuant to Code §§ 523(a)(4) and (6).

Roy and Rita Stith are the parents of Alan Stith, who is married to Sylvia Stith.  Together the Individual Debtors operate as a partnership, namely Stith Farms.  According to the Individual

                                                                                                4

Debtors, they have operated as partners for twenty-one years and have filed partnership tax returns since 1986. *See* Motion to Consolidate, filed on May 7, 2007 (Dkt. No. 6 in Stith Farms' case). Stith Farms owns the main farm and residence of Roy and Rita Stith. *Id.* All other real property, including the residence of Alan and Sylvia, is owned by Roy and Rita Stith, and is part of the dairy farm operation of Stith Farms in Pitcher, New York. *Id.* All farm expenses are allegedly paid from the Stith Farms account. *Id.* The Debtors allege that Alan Stith was the primary person conducting the day-to-day operations of Stith Farms and he also operated Stith Farms Logging. *See* Defendants' Response to Plaintiff's Statement of Undisputed Material Facts."

The following are set forth in the Plaintiff's Statement of Undisputed Material Facts:[1]

1.  The milk check generated by Stith Farms' milk production is the only regular income received by the partnership.

2.  Alan Stith also earns extra money from logging. That income is included in Stith Farms' income for income tax purposes.

3.  Stith Farms' gross income for 2002 was $173,133. Ignoring $20,579 in depreciation expenses, the partnership had a positive cash flow in 2002 of $15,083.

4.  Stith Farms' gross income for 2003 was $176,875. Ignoring $21,510 in depreciation expenses, the partnership had a positive cash flow in 2003 of $18,387.

5.  Stith Farms' gross income for 2004 was $159,160. Ignoring $18,105 in depreciation expenses, the partnership had a positive cash flow in 2004 of $14,142.

6.  Alan Stith takes a draw of $300 a week from the partnership income when funds are available.

---

[1] To the extent that the Debtors have objected to any of these facts, the Court has not included them.

5

7. Until late 2003, Sylvia Stith was unemployed. Alan and Sylvia's joint income for 2003 was $15,899.

8. Roy Stith's income is comprised of a small social security check, while Rita earns a modest sum doing clerical work for the Town of Pitcher.

9. The partnership's dairy income in 2003 and 2004 was stretched very thin. Before the partnership receives anything from their milk cooperative, withdrawals are taken by their mortgage lender to apply to two loans. Throughout 2003, the farm income was further reduced by an income execution served by Rolling Hills, a creditor who was collecting a judgment of approximately $81,000. Throughout 2003 and 2004, other than the checks referenced below from Baillie, deposits to Stith Farms account rarely reached $4,000 in any month, and were often less than $1,000.

10. Alan and Sylvia's finances were also shaky in early 2003, such that from January 2003 through June 2003, their personal checking account was riddled with NSF fees.

11. Prior to the events complained of in these Adversary Proceedings, Baillie had utilized Alan Stith and Stith Farms to harvest lumber.

12. In the Spring of 2003, Alan Stith, with Baillie's financial backing, obtained logging rights to a portion of the Morgan Hill State Forest in Truxton, New York, owned by New York State for the contract price of $348,515, handled through the Department of Environmental Conservation.

13. Alan Stith and Baillie entered into a "Timber Purchase (Advance) Agreement" on June 23, 2003 by which Baillie agreed to tender to Alan the contract price for the Morgan Hill timber contract in installments. *See* Exhibit B, attached to the Complaints.

14. Baillie tendered the initial down payment to Alan of $17,425.75 on May 23, 2003, and agreed to tender $69,703 within 30 days of the approval of the DEC contract, three more payments of $69,703, each over the next nine months, and a final payment of $52,277.25.

15. Alan Stith immediately forwarded the $17,425.75 down payment to the DEC.

16. On June 30, 2003, Baillie tendered the first $69,703 installment to Alan Stith.

17. Sylvia Stith went to Alliance Bank, where the Stiths do their banking, with Baillie's June 30, 2003 check, deposited $1,000 into her and her husband's

6

      personal checking account, took $1,203 in cash, and deposited the $67,500 balance into the Stith Farms checking account.

18. The Stith Farms account had been overdrawn several times in June 2003, after several large checks were written at a time when the account only had a balance of $70.57.

19. In August 2003, the account was reduced to $29,621.28, and by the end of September 2003, the account had a balance of only $14,203.35.

20. On October 8, 2003, Baillie delivered the second $69,703 installment, which Alan sent to the DEC.

21. In the interim, Stith Farms checking account was reduced to $3,455.19 by the end of October 2003 and $293.59 by the end of November 2003. By early December 2003, the Stiths began bouncing checks again, even with the deposit of two checks totaling $6,000 from Baillie for the purchase of logs.

22. Baillie tendered its third installment on December 10, 2003, along with a check for $1,065 for the purchase of logs allegedly not connected to the Morgan Hill State Forest matter.

23. From Baillie's third installment, monies were again sent out to creditors. Roy Stith received a check for $950 from Stith Farms on Christmas Eve, which Debtors assert was to reimburse him for a cow that was purchased at auction for Stith Farms, but paid for out of Roy Stith's funds. Rita issued a check for cash for $5,000, and Alan issued a check for cash for $2,050. Most checks from Stith Farms account are issued by Rita, who is the family bookkeeper and prepares the partnership tax returns.

24. By the end of December 2003, Stith Farms' checking account balance is down to $60,173.54. By the end of January 2004 it was reduced to $42,748.27. By the end of February 2004 it was reduced to $27,404.01. Deposits to the account were almost nonexistent.

25. At some point Baillie becomes aware that two of its payments of $69,703 were not forwarded to the DEC. Stith Farms check #698 for $69,703 was sent to Baillie in March 2004 but the check bounced. Check #703 for $49,703 was later delivered to Baillie, which check also bounces.

26. Alan falsely told Baillie that Rolling Hills had levied on the Stith Farms bank account, seizing Baillie's money. Ultimately, Baillie discovered the truth and filed [an] action in state court.

27. Alan Stith does not dispute that the funds Baillie sent him in trust were used to pay bills for both the Stith Farms partnership and for him and his wife.

The action, referenced above at ¶ 26, was commenced by Baillie against Alan Stith in New York State Supreme Court, County of Erie, on March 25, 2004. *See* Exhibit C, attached to the Motions. A default judgment was filed in the Erie County Clerk's office on May 13, 2004, against Alan Stith in the sum of $123,897.95, plus interest and costs of $510. *See* Exhibit D, attached to the Motions. According to a Report of Disposition, signed by W. Howard Sullivan, County Court Judge for Chenango County, Alan Stith pled guilty to a charge of third degree grand larceny on May 16, 2005. He was given five years probation and required to make restitution in the amount of $59,703. *See* Exhibit F, attached to the Motions.

In the interim, Baillie commenced an action in New York State Supreme Court, County of Chenango, against Stith Farms, Stith Logging, Roy and Rita Stith, as well as Sylvia Stith on or about December 6, 2004 ("Chenango County action") alleging breach of contract, unjust enrichment and conversion. *See* Exhibit G, attached to the Motions. On December 6, 2005, the individual defendants in the Chenango County action entered into a Stipulation of Settlement "in connection with the repayment of the unpaid indebtness [sic] from Alan Stith, a non party to this action, but whom a judgment was entered for the same circumstances as this action . . . ." *See* Exhibit H, attached to the Motions, at ¶ 7. The parties agreed that in the event that the judgment against Alan Stith was not fully satisfied that Baillie would be entitled to entry of judgment against the individual defendants in the Chenango County action for any unpaid indebtedness. *Id.* at ¶ 8. The individual defendants also admitted that "they have no valid defense or right of off-set with regard to the amount owing to Baillie . . . ." *Id.* at ¶ 2.

## DISCUSSION

The standard for summary judgment is well settled. *See 325 Bleecker, Inc. v. Local Union No. 747,* 500 F.Supp.2d 110, 118 (N.D.N.Y. 2007). Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the pleadings, affidavits and depositions, the Court must "resolve all ambiguities and draw all inferences in favor of the non-moving party." *See Chan v. Gantner*, 464 F.3d 289, 292 (2d Cir. 2006).

Exceptions to discharge of a debt are to be strictly construed in the debtor's favor. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Cazenovia College v. Renshaw (In re Renshaw),* 222 F.3d 82, 86 (2d Cir. 2000). The Plaintiff bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291. In satisfying this burden, the doctrine of collateral estoppel is applicable to dischargeability proceedings. *Id.* at 285 n.11.

If collateral estoppel is to apply, Plaintiff must demonstrate that the issues which are determinative of its right to the relief sought were necessarily and actually decided in a prior litigation. Thus, Plaintiff must establish that

1) the issues sought to be precluded are identical to those involved in the prior action;
2) the issues' determination in the prior action was essential to the prior judgment;
3) the issues were determined by a valid and final judgment; and
4) the issues were actually litigated in the prior action.

*In re Goux*, 72 B.R. 355, 358 (Bankr. N.D.N.Y. 1987) (citation omitted).

9

Code § 523(a)(4) and (6)

As an initial matter, the Court finds that the complaint filed against Stith Farms must be dismissed. Code § 523(a) is not applicable to corporate or partnership debtors. *See Yamaha Motor Corp.U.S.A. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir. 1985); *In re M.M. Winkler and Assocs.,* 209 B.R. 397, 401 (Bankr. N.D. Miss. 1996*), rev'd on other grounds,* 239 F.3d 747 (5th Cir. 2001)*; In re Trafalgar Assocs.*, 53 B.R. 693, 696 (Bankr. S.D.N.Y. 1985).

Code § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[2]" 11 U.S.C. § 523(a)(4). In applying Code § 523(a)(4), the Court must consider the impact of Alan Stith's guilty plea to third degree grand larceny. In *Goux* this Court acknowledged that "'a criminal conviction, whether by jury verdict or *guilty plea*, constitutes estoppel in favor of the [plaintiff] in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.'" *Goux*, 72 B.R. at 359, quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978). This Court found that "[t]his is so as the guilty plea serves as an admission of all elements of the formal criminal charge." *Id.* (citations omitted). In *Goux* the debtor had pled guilty to the state court criminal charge of petit larceny. The Court pointed out that with regard to Code § 523(a)(4), "as a matter of federal common law, embezzlement has been defined as 'the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come.'" *Id.* The criminal statute under which the debtor was convicted based on his guilty plea imposed criminal liability

---

[2] Larceny involves the unlawful taking of someone else's personal property with the intent to deprive the person of it permanently. On the other hand, embezzlement is the "fraudulent taking of personal property with which one has been entrusted," i.e. the fraudulent intent arises after taking possession. *See* BLACK'S LAW DICTIONARY 561 (8th ed. 2004).

on a person who "steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from the owner thereof." New York Penal Law § 155.05 (McKinney's 1999 & Supp. 2008). Petit larceny, to which the debtor in *Goux* pled differs from grand larceny only in the amount of money involved that was stolen. *Compare* New York Penal Law § 155.25 (petit larceny) with § 155.35 (grand larceny in the third degree). Ultimately, this Court in *Goux* concluded that the debtor's prior guilty plea estopped him from presenting evidence as to the debt's dischargeability pursuant to Code § 523(a)(4) with respect to conduct constituting embezzlement. *Id.* at 360; *see also In re Jardula*, 122 B.R. 649, 655 (Bankr. E.D.N.Y. 1990) (finding that "[t]he debtor's plea of guilty to petit larceny conclusively establishes that his debt to plaintiff is not dischargeable because it is the product of embezzlement. Collateral estoppel precludes relitigation and entitles the plaintiff to summary judgment").

     Based on Alan Stith's plea of guilty to the charge of third degree grand larceny, the Court concludes that Baillie is entitled to summary judgment on the issue of nondischargeability pursuant to Code § 523(a)(4). However, there still remains the issue of nondischargeability with respect to the other Individual Defendants, including Sylvia, Roy and Rita Stith. The facts indicate that none of them pled guilty to any criminal charges and that none of the issues raised by the Plaintiff in these adversary proceedings were actually litigated civilly in the Chenango County action. Instead, they entered into a Stipulation of Settlement in connection with the repayment of the unpaid indebtedness owed by Alan Stith to Baillie. In the Stipulation, Sylvia, Roy and Rita agreed to assume liability for the debt owed to Baillie in the event that Alan Stith defaulted on it. They also acknowledged that "they have no valid defense or right of off-set with

Case 07-80007-6-dd   Doc 17   Filed 03/27/08   Entered 03/27/08 11:41:42   Desc Main
                          Document      Page 11 of 13

11

regard to the amount owing to Baillie . . . ." They did not admit to having committed either fraud or defalcation while acting in a fiduciary capacity, or embezzlement or larceny as required if a debt is to be deemed nondischargeable pursuant to Code § 523(a)(4). Also, there is no evidence before the Court to establish a basis for vicarious liability against them when the injury to Baillie occurred. While Rita Stith may have written checks on the checking account belonging to Stith Farms, without more, this does not establish the necessary fraudulent intent. *See In re Cromer Farms, Inc.*, Case No 99-10321, Adv. Pro. 99-1015, 2000 WL 33740256 at *3 (Bankr. M.D.Ga. July 18, 2000), *aff'd sub nom. Ty Ty Peanut Co. v. Cromer Farms, Inc.*, 45 Fed.Appx 877 (11th Cir. 2002) (noting that "[w]hen debtors use funds to try to keep their business operations functioning, courts hesitate to find the necessary fraudulent intent").

In *Cromer Farms* the parties had entered into a consent judgment, which included language regarding nondischargeability of the debt. The plaintiff in an adversary proceeding commenced pursuant to Code § 523(a)(4) and (6), argued that collateral estoppel, based on the confession of judgment, applied and that the debtor was precluded from asserting that the debt was dischargeable. The bankruptcy court disagreed, finding that bare conclusions of law in the judgment that the debt was nondischargeable was not binding on the court. *Id.* at *5. The bankruptcy court distinguished the situation in which a consent judgment contains findings of fact that might be entitled to preclusive effect. *Id.* In the matter presently under consideration by this Court, the Stipulation of Settlement contains no conclusions of law with respect to dischargeability of the debt and no findings of fact with respect to any actions of Sylvia, Roy and Rita Stith from which the Court could rule as a matter of law that the Plaintiff was entitled to summary judgment pursuant to either Code §§ 523(a)(4) or (6).

Code § 523(a)(4) requires that Plaintiff establish either defalcation while acting in a fiduciary capacity or embezzlement or larceny. There is no evidence to suggest that Sylvia, Roy or Rita were acting in a fiduciary capacity with respect to Baillie. Apparently, any contractual relationship that existed was between Alan Stith and Baillie. In addition, there has been insufficient evidence presented for the Court to rule as a matter of law that there was actual wrongful intent on their part insofar as embezzlement or larceny are concerned. *See In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007) (noting that Code § 523(a)(4) requires a showing of fraudulent intent or intentional deceit).

Code § 523(a)(6) requires proof of (1) an intentional act by the three Defendants; (2) done with the intent to harm; (3) which caused injury to the Plaintiff; and (4) injury was the proximate result of the actions by the defendants. *In re Wong*, 291 B.R. 266, 280 (Bankr. S.D.N.Y. 2003). For purposes of Code § 523(a)(6) conversion is considered an injury to property. *In re Belval*, Case No. 05-12056, Adv. Pro. 06-1014, 2007 WL 666825, at *5 (Bankr. D.Vt. Feb. 28, 2007); *Wong*, 291 B.R. at 280. Code § 523(a)(6) requires that the Plaintiff establish that Sylvia, Roy and Rita Stith acted willfully in depriving the Plaintiff of its funds, as alleged, and that they acted maliciously without just cause or excuse in causing or committing said injury.

Based on the facts presented, the Court must conclude that there are genuine issues of fact for trial as regards Sylvia, Roy and Rita Stith with respect to the elements of both Code §§ 523(a)(4) and (6).

Based on the foregoing, it is hereby

ORDERED that the adversary proceeding commenced against Stith Farms (Adv. Pro. 07-80039) is dismissed; it is further

13

ORDERED that Baillie's motion for summary judgment with respect to Alan Stith (Adv. Pro. 07-80010) is granted and the debt owed by him to Baillie is determined to be nondischargeable; it is further

ORDERED that Baillie's motion for summary judgment with respect to Sylvia Stith (Adv. Pro. 07-80010) is denied; and it is further

ORDERED that Baillie's motion for summary judgment with respect to Roy and Rita Stith (Adv. Pro. 07-80007) is denied; and it is finally

ORDERED that the trial in both of the adversary proceedings as to Sylvia, Roy and Rita Stith (Adv. Pro. 07-80010 and 07-80007) is scheduled for Wednesday, June 18, 2008, at 9:00 a.m. at Room 236 of the Alexander Pirnie Federal Building, 10 Broad Street, Utica, New York 13501.

Dated at Utica, New York

this 27th day of March 2008

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge